543 So.2d 1250 (1989)
THE FLORIDA BAR, Complainant,
v.
Charles F. WISHART, Respondent.
No. 70584.
Supreme Court of Florida.
May 4, 1989.
Rehearing Denied June 28, 1989.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee and Bonnie L. Mahon and David R. Ristoff, Bar Counsel, Tampa, for complainant.
Charles F. Wishart, Brandon, in pro. per.
PER CURIAM.
This disciplinary proceeding is before us for consideration of a referee's report finding professional misconduct. The referee recommends that Wishart be disbarred for committing numerous disciplinary violations during the course of a custody proceeding involving his step-granddaughter. The Florida Bar (Bar) petitioned for review after its Board of Governors (Board) voted to appeal the recommendation of disbarment and seek instead a three-year suspension. Wishart cross-petitioned. We have jurisdiction and consider the case pursuant to rule 3-7.6 of the Rules Regulating The Florida Bar.[*] Art. V, § 15, Fla. Const. We agree with the Board's recommendation of three years' suspension.
Respondent Charles Wishart is the step-grandfather of Tiffany Bates, who was nine months old when this dispute began. Charles' wife, Bobbie Sue, is the child's paternal grandmother. The Wisharts were named as parties in the dissolution of marriage between Tiffany's parents. At the custody hearing, Wishart was given an opportunity to be heard, but was prevented from presenting witnesses. The court entered a temporary order awarding custody to the mother. Several months later, Wishart sent letters to the trial judge containing information that was beyond the scope of the evidence presented at the prior hearings and potentially damaging to the mother. The judge recused himself on the basis *1251 of the letters. The order of recusal, which recommended that the cause be reheard de novo, left unmentioned the temporary custody order. Wishart took possession of Tiffany and refused to return her to her mother, claiming that the recusal order had the effect of voiding the temporary custody order. A subsequent judge entered a temporary restraining order requiring Wishart to return the child. Wishart refused, claiming that the restraining order was void because it had not been certified and because the underlying custody order was void.
At a hearing on the restraining order, Wishart refused direct orders of the judge to reveal the location of Tiffany and was jailed. The following day, Wishart offered to deliver Tiffany but only if the court promised not to return her to her mother. The court agreed and the child was delivered, placed in the custody of the Department of Health and Rehabilitative Services for a short while, and then returned to her mother. Wishart actively participated in the final dissolution and custody action which resulted in an order of shared parental responsibility, with primary residence being with the mother. Wishart again gained possession of Tiffany and refused to return her to her mother. He refused to obey a writ of habeas corpus issued by the circuit court that ordered him to surrender the child, claiming the writ was void because it contained no return date and was predicated upon the final judgment, which in turn was void because it was rendered while the case was not yet at issue. Wishart appealed the final judgment of dissolution. The district court reversed and remanded so that Wishart could be given an opportunity to present evidence. Wishart v. Bates, 487 So.2d 342 (Fla. 2d DCA 1986). On remand, the trial court dismissed his counterclaim for custody, but granted the Wisharts visitation rights with the child on every other Saturday. The mother appealed and the district court reversed on the visitation rights, ruling that the award of such rights to a non-parent is unjustified. Bates v. Wishart, 512 So.2d 977 (Fla. 2d DCA 1987), quashed in part, 531 So.2d 955 (Fla. 1988). This Court, in turn, quashed the district court decision, pointing out that grandparents can be awarded visitation rights, and remanded the case so that the district court could determine only whether the circuit court abused its discretion in awarding the Wisharts visitation rights. Wishart v. Bates, 531 So.2d 955 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1633, 104 L.Ed.2d 149 (1989), on remand, 545 So.2d 906 (Fla. 2d DCA 1989).
The Bar filed a complaint charging Wishart with numerous violations, and the referee made findings and recommendations including the following:
12. On numerous occasions (too numerous to count) during the torturous [sic] history of the custody dispute respondent asserted his personal opinions and/or feelings about the justness of court rulings, the truthfulness of witnesses, opposing counsel and reports of court counselors (as he continued to do during this disciplinary proceeding).
13. Throughout the entire time-frame encompassed by the Bar's Complaint respondent deliberately, wilfully and knowingly disobeyed, and counseled others to disobey, orders and judgments of the Circuit Court of the Thirteenth Judicial Circuit. Respondent pursued a course of conduct knowingly designed to disrupt the orderly process of the judicial system in order to serve his own ends, as he alone defined them. Whenever confronted with an adverse judicial determination, respondent invented reasons to classify the adverse ruling, order, or judgment as "void" thereby permitting him, in his own mind, to ignore the ruling, order, or judgment with impunity. He has yet to recognize, or even acknowledge, the adverse impact this course of conduct had, or will have in the future, on the very system he took an oath to support. His overall defense that he was only motivated by the necessity to protect Tiffany from harm, real or imagined, is rejected in its entirety.
... .
I recommend that the respondent be found guilty of the following violations *1252 of the Code of Professional Responsibility:
DR 1-102(A)(4) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation);
DR 1-102(A)(5) (engage in conduct which is prejudicial to the administration of justice);
DR 7-102(A)(1) (file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another);
DR 7-102(A)(3) (conceal or knowingly fail to disclose that which he is required by law to reveal);
DR 7-102(A)(7) (counsel or assist his client in conduct that a lawyer knows to be illegal or fraudulent);
DR 7-106(C)(4) (assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matter stated herein);
DR 7-106(C)(6) (engage in undignified or discourteous conduct which is degrading to a tribunal); and
DR 7-106(C)(7) (intentionally or habitually violate any established rule of procedure or of evidence).
In recommending disbarment, the referee made the following observation:
After a finding of guilt and prior to recommending discipline, pursuant to Integration Rule 11.06(9)(a)(4), and Rule 3-7.5(k)(4), Rules of Discipline, I considered the following personal history and prior disciplinary record of the respondent, towit:
(1) Age: 52 years old
(2) Date Admitted to Bar: May 23, 1966
(3) Prior Disciplinary Record: None
(4) Mitigating Factors: No prior disciplinary record
(5) Aggravating Factors:

a) dishonest or selfish motive;
b) a pattern of misconduct;
c) refusal to acknowledge wrongful nature of conduct;
d) substantial experience in the practice of law; ....
The Bar petitioned for review to plead the Board's position that a three-year suspension is a more appropriate discipline, and Wishart cross-petitioned. The Bar claims that while disbarment may ordinarily be the proper discipline for such misconduct, Wishart's close personal and emotional involvement in the custody proceeding should have been considered as a mitigating factor sufficient to decrease the degree of discipline to three years' suspension. Wishart, on the other hand, raises numerous issues challenging the referee's factual findings and recommendations of guilt.
Wishart essentially contends that he was under no obligation to obey the temporary custody order, the temporary restraining order, the final judgment, or the writ of habeas corpus because all these were void. We disagree. If he doubted the validity of these court documents, his option was to challenge them legally rather than to ignore them. The documents are presumptively valid and he is obligated to obey them until such time as they are properly and successfully challenged. As to his contentions that he was not given opportunity to be heard, that sending the letters to the judge was proper, that he did not conceal Tiffany's whereabouts, and that his expressions of personal opinion were proper, we agree with the findings of the referee. Accordingly, we adopt the referee's recommendations of guilt.
We agree with the Board, however, that the referee erred in failing to properly consider Wishart's close personal and emotional involvement in the custody proceeding. The child involved in the proceeding was his step-grandchild and his professed concern was that if she were returned to her mother she would be subjected to needless surgery, prompted solely by the mother's neglect. While Wishart, as an officer of the court, was  or should have been  aware of his obligation to trust in the efficacy *1253 of the legal system in resolving this matter, it is clear to this Court, as apparently it was to the Bar, that his judgment was impaired by his proximity to the cause. We note that Wishart has been a member of the Bar for over twenty years with no prior disciplinary record and, while his conduct is inexcusable, it does not merit the most severe of discipline, disbarment.
Charles F. Wishart is hereby suspended from the practice of law for three years. He shall have thirty days to close his practice in an orderly fashion and protect the interests of his clients. His suspension shall be effective June 5, 1989. As provided by rule 3-5.1(h) of the Rules Regulating The Florida Bar, he shall provide notice of his suspension to his present clients and shall accept no new clients until reinstated. Wishart is ordered to pay the costs of this proceeding. Judgment is entered against him for $8,035.18, for which sum let execution issue.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
BARKETT, J., dissents with an opinion.
BARKETT, Justice, dissenting.
Short of defrauding a client, I can think of no more flagrant misconduct by an attorney than deliberately disobeying a series of direct orders by the court. This misconduct is not justified, as Wishart contends, by the attorney's belief that these orders were contrary to law. Our entire system of jurisprudence is built on the principle that disagreements with the application of law can be corrected by appeals, by collateral attacks, or by petition to the legislature for a change in the law. No attorney is ever privileged to arrogate to himself or herself the right to say with finality what the law is. That prerogative inheres in the courts. Without this principle, our legal system would fall into shambles.
I agree that emotional involvement could be a mitigating factor in a given case. I do not find it to be in this one. At oral argument, Wishart stated quite plainly that he wilfully disobeyed the direct orders of the court because he believed the judge to be wrong. He indicated that he would engage in this conduct again not only when his granddaughter was involved but on behalf of clients as well, if he felt it necessary.
Of necessity, an attorney must be required to recognize those instances in which his or her professional judgment is impaired. In the extreme form presented in this case, the lack of this capacity itself is a serious indicator of unfitness to practice law.
Moreover, I believe it to be a derogation of our duty to ignore the clear evidence in this record of Mr. Wishart's incompetency. If this Court disbars a lawyer for breaking the law in ways that do not affect clients, surely we should do so when we are directly faced with evidence of incompetence that cannot help but work to the detriment of future clients.
For these reasons, I cannot agree with the recommendation of the Board or the majority opinion. I believe that the referee was correct and Mr. Wishart should be disbarred.
NOTES
[*] The complaint and report were based on the former Integration Rule and Code of Professional Responsibility.